Good morning, and may it please the Court, William Koski on behalf of Plaintiff and Appellant T.M.J. So the central question before the Court today is really straightforward. It's when did T.M.J.'s mother know, or when should she have known, about the alleged action by the Vallejo and Fairfield school districts that forms the basis of his complaint? To answer that question, we really need to know two things. First of all, we need to understand the nature of T.M.J.'s claim that the school districts denied him a free and appropriate public education or a FAPE. And second of all, we need to have a careful factual analysis of when T.M.J.'s mother, a person with no specialized expertise in educational assessment supports and interventions, should have discovered the basis of the claim. Though the question before the Court is pretty straightforward, it has really significant consequences for the ability of families and children, particularly low-income families and children, to access their children's right to a FAPE. It will have significant consequences for whether the IDEA's ambition that school districts and families collaboratively plan for children's success can be realized, or whether families and school districts will be incentivized to mistrust and even file litigation against each other. The district court's decision needs to be reversed not only because it misapplies the discovery rule for when the claim accrues for purposes of the IDEA statute of limitations, it must also be overturned because if it is allowed to stand, it will foster that mistrust and it will cause costly litigation between families and schools rather than collaboration toward student success. So with the rest of my time, I'm happy to answer any questions, but with the rest of my time I can describe the precise nature of T.M.J.'s claims that he raised in the complaint, something the district court didn't go through very carefully. And then I'll also describe when T.M.J.'s mother knew or should have known that her son had dyslexia-based needs. So the claim that we focused on here is that they failed to provide T.M.J. a free and appropriate public education because he did not identify his need, they did not identify his needs stemming from dyslexia. They did not implement evidence-based literacy programs and assistive technologies that would have helped him to read. This is really important to take a look at because the district court... She asked you this, counsel, because the briefing here really centers on his dyslexia, a dyslexia diagnosis, but that's not what's pled in the complaint. Is that a problem? There was an opportunity to amend and you didn't choose to amend the complaint to make that specific allegation. What do we do with that? In the district court, the dyslexia-based needs were definitely pled. I believe that the reference was to the original complaint before the California Office for Administrative Hearings where there was no specific mention of the word dyslexia, but over and over again it was pled that all of the symptoms of dyslexia were failed to have been identified by the school district in that ALJ complaint and that they did not provide the evidence-based interventions that would address those needs. And if there were any question that dyslexia was in front and center here, in the context of the motion to dismiss the complaint before the ALJ, TMJ made it very clear it was the district's failure to assess his dyslexia and identify those dyslexia-based needs. So this has been known really since the beginning of the due process filing. So I see that there's an allegation they had characteristics similar to a student with dyslexia. I think dyscalculia and dysgraphia were the other symptoms. You're not relying on any of that. It's really the dyslexia that's the issue. Dyslexia is the main focus of this and the failure to provide those evidence-based reading interventions. And it was known right from the start by the Vallejo School District that he had these dyslexia-based needs. In fact, right from his first assessment during the 2013-14 school year, they identified that he struggles in phonemic awareness, reading fluency, and high-frequency words, indicating learning disabilities and dyslexia to anybody who is trained in those kinds of assessments. And that's not TMJ's mother. In fact, there was a computer-generated report at that very same time that said there should be some follow-up to determine whether or not they have some, he has a learning disability. Under the Timothy O. Standard for what is a suspected disability, this is more than enough to put that district on notice. Instead, they only focused on his ADD and ADHD, his attentional difficulties. And year after year, there were repeated assurances to TMJ's mother that it was those attentional needs that were the real problem causing his learning difficulties. She didn't know anything about dyslexia. She didn't understand what phonemic awareness was. No parent should be held to that kind of a specialized expertise standard. And so for year after year, she participated in IEPs. She was extremely diligent. She was very much involved in TMJ's education. But year after year, she was assured that the district was meeting his circumstances. Now, in the prior oral argument, there was some reference to the Andrew F. Standard for what is a free and appropriate public education. And it is, you know, whether or not the student is making progress in light of his circumstances. The circumstances that TMJ's mother understood was that he had ADHD and he had attention problems. And it wasn't until during the pandemic and shortly thereafter where he was essentially or she was essentially his primary instructor, sitting with him, doing Zoom school like so many people did, trying to focus his attention on the words on the page, that she realized that he didn't understand anything that was in front of him, that there must be something else going on. And so that's when she sought out additional assessments for him. And that's when it was ultimately identified that he had these dyslexia-based needs and that the district... And what year was that again? That was during the 2020-23 school year and the fall of the 2022-23 school year. But the previous studies, following up on Judge Wynn's question, there had been assessments back in 2020 that he had a specific learning disability, correct? That's correct. And doesn't that classification include dyslexia? So the identification under the eligibility category of specific learning disability, one of the several disability categories under the IDEA, is only sort of marginally helpful in determining what the underlying needs are. And that's because the specific definition of specific learning disability includes a vast array of things that cause... How vast is the array? Perceptual disabilities, brain injury, minimal brain dysfunction, dyslexia, developmental aphasia. So dyslexia is included in those? It is definitely included among those, but the district never identified those dyslexia-based needs. This would have been the Fairfield district at that point. Right, but this is getting back to where we were with the last argument, that it seems like what you want is for there to be actual knowledge, right? I mean, if even a 2020 assessment that a new assessment that gives them a new diagnosis that could include dyslexia, if that's not sufficient to trigger the should-have-known standard, then basically you're asking for an actual diagnosis of dyslexia and saying that the statute can't run until somebody has that. So what we would be asking for is, again, going back to the claim that TMJ has, and that is he was denied a free and appropriate public education, neither of the school districts at any point said that he had these dyslexia-based needs and that we could address them through evidence-based structured literacy programs. No reasonable parent should understand that this wide category of specific learning disability that includes everything from, you know, brain injuries to dyslexia, no parent should understand and that word dyslexia was not mentioned by the school districts again. It's not the specific diagnosis per se of dyslexia, it's what needs flow from that. And if there were any question that the districts themselves did not identify those needs, the Fairfield School District, after finding him eligible under the category of specific learning disability, didn't provide those evidence-based interventions, didn't provide a structured literacy program. They just did the same old, same old again. So the district itself didn't do anything different, why should a parent, again, a reasonable parent who was very much involved, why should a parent be put on notice at that point that she has a claim that the school districts failed to do something? So I don't want to focus too much on the specific, quote, diagnosis of dyslexia, I want to focus on what a reasonable parent should know when she gets a specific learning disability identification under this broad category. Without that specialized expertise that the school district had, she shouldn't know much more. She didn't know much more until she was diagnosed. At the time of that 2020 study, there had been some eight years of this, had there not – wasn't there essentially a period of some eight years of diagnosis that he really wasn't progressing very well? There's no question. Everybody knew that he wasn't progressing very quickly in his reading at all. That was never at issue. I mean, year after year for eight years. So if poor performance alone, poor reading performance specifically were enough to give a claim – to give rise to a claim of a denial of free and appropriate public education, that would be great for me because then every time I –  That would be totally unworkable. That's totally unworkable. You're right. That would be great for your position.  But that's unworkable. Yeah. Exactly. And that's essentially what the district court found here because they said – the district court said in every year since that original identification under the IDEA, the parent should have known that he – that he had a claim for denial of FAPE. That couldn't be true. That means one year, literally one year after that original identification, she should have filed a lawsuit.  But we don't need to conclude that. We – the issue is really the sum total of all these years, including 2020, and whether at that point the statute should have started to run. You know, and harkening back to the conversation you had in the earlier case, what happened during that time period up until – we can leave that specific learning disability diagnosis aside for a second. What happened up until that point was over and over again the district gave reasonable assurances that they were – that they were addressing his, again, attention-based needs, his ADD, ADHD needs. The mother, of course, without that specialized expertise is going to rely on that. So it's not merely the poor performance alone year after year after year. It's the poor performance plus the assurances that they were doing what they were supposed to do. But is this getting then into the tolling? Because, you know, the tolling doesn't provide for tolling based on assurances. It provides for tolling based on specific misrepresentations or withholding of certain specific statutorily required information. So it almost seems like you're trying to add a new tolling rule for reasonable assurances, which sounds like a reasonable rule, but it's just not the one that the statute has. What I'm trying to do is looking – look carefully at the analysis of what – of the should-have-known piece of this. She should not have known that there was something else going on with him. She should not have known that he had a learning disability because she was being assured. So that's why when you look at the standard here for when a claim accrues, it really is when the parent should have known about a denial of fate. She shouldn't have known that because she was being assured differently. So that's what the assurances – the work that the assurances are doing in the context of that initial analysis on the new or should-have-known standard. With the misrepresentation or the withholding of information tolling exceptions, it's doing a different kind of work over there. I really want to focus on the should-have-known piece of this and a reasonable parent in that  Right. I mean, this is a discovery rule. You know, and a discovery rule usually puts some duty of investigation on the plaintiff, right? And we can moderate that duty perhaps by saying a parent has a duty as a parent. A parent is not an expert. So I take your point on that. But even so, you know, at some point if the child is doing so poorly, including in reading, which obviously has a connection to what you ultimately now claim, which is dyslexia, do you not think there's some point along the line where a parent has to say, okay, whatever the cause of this, this is just not an adequate education and now it's on me to kind of do something? Yeah. There is some point in each one of these cases, Your Honor. And the point here was when she realized it was not his attention difficulties. There is definitely going to be a different point in another case. That point was reached in 2020?  But 2020 was the first time there was a reference to a specific learning disability. Isn't that correct? That was the, that again is when he became eligible under that. But I mean, my point is 2020 is the first time there was a specific reference to a specific learning disability that included, included, um, um, um, Your Honors, I failed to reserve some of my time for rebuttal. Um, I'm wondering if I could do that now. Go ahead and answer the question first. Sorry, Judge Bannon. I mean, the point is, is that 2020 was the very first time that there was a reference to a specific learning disability that would include dyslexia. Up to that point in time, there was optimism. Correct. Among many other things.  But my point is, is that it was 2020 when there was a specific reference to a specific learning disability. That is correct.  Thank you, Counsel. Good morning, Your Honors, and may it please the Court. Kelly Murphy for Appellee Vallejo City Unified School District. The Court should affirm the District Court's decision in this matter. It's important to recognize that this is a case where the due process complaint at issue was filed nearly five years after Appellant, the student, left the Vallejo City Unified School District. At the time the student's parent filed the due process complaint, the student had not been a student at all in the district for almost five years, and had undergone subsequent evaluation and received services in an entirely different school district during that time. This is an extreme example of what could happen if the rule were that the statute of limitations begins to run when there is a diagnosis that the student or parent agrees with. The District Court correctly found here that the Appellant knew or had reason to know about the facts forming the basis of the due process complaint in each of the school years in which he alleges he was denied a FAPE by Vallejo City Unified School District. That's from 2013-14 school year through 2017-18 school year. Five to nine years before the due process complaint was actually filed. The Court found that there were sufficient facts in each of the school years for the student's parents to observe that he was not making progress and that he had demonstrated difficulties specifically in reading and language, including demonstrated regression in several years. If that were not enough, the District Court found that at a minimum, the student's parents knew or should have known about the facts underlying the due process complaint at the latest as of February 11th of 2020, when the subsequent school district assessed and identified Appellant as having a specific learning disability, which as was discussed earlier, includes dyslexia. This was more than three years. Thank you, Counsel, because as we discussed in the last case, it's really, I think, difficult to say that when a child's not progressing, that that alone should trigger the statute of limitations. I mean, that can't be the case, right? You wouldn't want parents to rush to the courthouse every time their child's not doing well in any given school year. So do we need to address any years prior to 2020? Well, I think it isn't that at the first evidence the child's not doing well, the statute of limitations begins to run. But here we have this extreme example of six years where there was demonstrated regression, there was demonstrated problems with the student. So we don't have to pick a time, really, anywhere in there, other than to say that... Do we have to pick a time before 2020? Because in 2020 was when he was diagnosed with suffering from a specific disability, right? And then within that umbrella category includes dyslexia. Well, I do think that there was a time period before that where the parents should have known that the FAPE was being denied and had all the facts to know that. Whether I can say... We understand that, but I guess the question is, is it sufficient to conclude that by 2020 they knew or should have known? If that's true, do you prevail? Yes, I believe so. Because that's the very latest that the parent should have known. Right. So I mean, whether they knew or should have known in 2013 or 2014 or 2016, we wouldn't necessarily need to decide that. Correct. Correct. To allow these claims to proceed against the way a city-unified school district would effectively eliminate the limitations period for IDEA claims, and it would allow parents to ignore clear and repeated knowledge of their child's educational challenges and deficits, and it would extend the triggering of the statute of limitations indefinitely, unless and until there's evidence of a possible diagnosis that was allegedly missed by the school district. There simply has to be a limit, and there is. This Court has described the standard as the limitations period begins to run when a parent has knowledge that a student's education is inadequate, not when the parent learns they have a cognizable legal claim. And here, the appellant argued in the district court that the knew or reason to know or had to have expert knowledge to reach this conclusion or to trigger the statute of limitations, but there was no expert knowledge needed at that time. The parent merely sat down with the student. I take it your position is at least by the 2019-2020 timeframe, because he had regressed and had done so poorly, that the parents were on at least inquiry notice that their child was not receiving a FAPE? Absolutely. Absolutely. And the latest time that this statute of limitations can be triggered, it's important to note that the student was not even a student at Vallejo City Unified School District. There were things that had occurred after the student left, and so they hadn't even assessed the student further at that time. Now, different than in the district court, the appellant's arguing that the date is even later during the 22-23 school year when the mother requested that the subsequent school district evaluate him for dyslexia. And it's also important to note here that there's nothing alleged and nothing, I believe, in the record that shows there was actually a diagnosis of dyslexia or that he had dyslexia when he attended Vallejo City Unified School District. So the statute of limitations, according to the appellant's argument, might not yet have accrued. And again, we're so far beyond the time when the student actually even attended the district that that would just be an absurd result.  And I think that what the appellant actually is arguing, or the effective argument that the appellant's making here, is there has to be actual knowledge on the parent's part. And that's simply not the standard. And I think that there's confusion, that the appellant's confusing the exceptions to the rule with the standard knew or should have known. It's important to note that the, again, I believe that the statute of limitations was triggered at the latest in 2020 based on the knew or should have known, but there's absolutely no evidence of any misrepresentations, specific misrepresentations, by the school district or withholding of information that Vallejo City Unified School District was required to give to the parents. And there's been argument that effectively equates a specific misrepresentation to reasonable assurances that the deficits are due to a particular cause. And that simply can't be the case, because that would mean that every time a school district got it wrong, there was a specific misrepresentation. And that's not the standard. Here, we don't believe that the Vallejo City Unified School District got it wrong, but there is absolutely no evidence of any specific misrepresentation by the district that it had resolved the problem that forms the basis of the complaint, or any misrepresentation of anything by the district. So to find that because the district assured the parent that they were assessing the student or that they had evaluated the student for any of a number of things, again, is not a specific misrepresentation. And the district court correctly found that neither of the exceptions applied. The appellant actually never even argued the first ground, the first exception in the district court, never cited to any evidence of any specific misrepresentation. And there simply is none. And there's also no evidence of any withholding of information from the parent that was required to be given to the parent under the IDEA. If there are any questions, I'm happy to answer those. Thank you. Thank you. Thank you, Your Honors. Thank you. Very briefly, Your Honors, I just want to reiterate the fact that the 2020 identification under the eligibility category of specific learning disability did not give enough or any real new information to the parent that should have triggered her knowledge. And that's because, again, it is such a broad category of things, so much so, again, that the Fairfield School District didn't change any of their methods of teaching TMJ. So she had no reason to believe that there was anything new going on until later on when she discovered that it wasn't his attention problems that were causing his reading problems. And then the last thing that I will say is that with regard, the word inadequate has been thrown around quite a bit. It comes up in the Hathaway decision. I really want to focus on the point on which a parent knew or should have known, not that it was an inadequate education per se, but rather that it was a denial of a free, appropriate public education. And that's when the claim and the basis of the claim should have been known. And I just wanted to bring it back to that because otherwise we're going to get into a conversation about what does inadequate mean. Is it inadequate about the outcomes for the child or is it inadequate about the actual education the child was receiving? I want to focus on the denial of faith. Thank you. All right. Thank you very much to both sides for your argument this morning. The matter is submitted and that concludes this morning's argument. Calendar will be in recess until tomorrow morning.
judges: NGUYEN, BRESS, Bennett